A99A2465. DEPARTMENT OF PUBLIC SAFETY v. SCHUEMAN.
(532 SE2d 487)

RUFFIN, Judge.

After the Georgia Department of Public Safety refused to reinstate Kirk Schueman's driver's license, Schueman appealed to the superior court, which reversed the department's decision and ordered reinstatement upon the completion of certain conditions. The department appeals, contending that the superior court erroneously construed OCGA § 40-5-75. We agree with the superior court and affirm.

Before discussing the facts of this case, it is helpful to set forth

---

the relevant statutory authority. Pursuant to OCGA § 40-5-75 (a), the driver's license of any person convicted of certain drug offenses is automatically suspended. Subsection (a) (1) provides that, upon the first such conviction,

> the period of suspension shall be for not less than 180 days. At the end of 180 days, the person may apply to the Department of Public Safety for reinstatement of his or her driver's license. Such license shall be reinstated only if the person submits proof of completion of a DUI Alcohol or Drug Use Risk Reduction Program approved by the Department of Human Resources and pays to the Department of Public Safety a restoration fee of $210.00 or $200.00 when such reinstatement is processed by mail.

Subsection (a) (2) provides that, upon the second such conviction within five years, the suspension shall be for three years, but the person may apply for reinstatement one year after the date of conviction, following the same procedure outlined in subsection (a) (1).

Under OCGA § 40-5-75 (b), the periods of suspension begin to run on the date of the person's conviction. However,

> if, at the time of conviction of any offense listed in subsection (a) of this Code section, the person does not have a driver's license or the person's driver's license has been previously suspended, the periods of suspension specified by this Code section shall not commence until the person applies for the issuance or reinstatement of a driver's license.[1]

Although there is no transcript of evidence in the record, the relevant facts are essentially undisputed. Schueman was convicted of violating the Georgia Controlled Substances Act (VGCSA) on January 17, 1995, and again on October 3, 1995. At the time of these convictions, Schueman's driver's license was already suspended for various offenses in DeKalb County, the City of Lawrenceville, and Markham, Illinois. The DeKalb and Lawrenceville suspensions were cleared by August 6, 1996, although the suspension for failure to appear in Illinois was not cleared until March 5, 1998.

At some point before August 6, 1996, Schueman requested that the department reinstate his license. As the trial court noted in its order, however, the only evidence of such request is a letter from the department, dated August 6, 1996, denying the request. In this letter, the department advised Schueman that his suspension for the

---

[1] OCGA § 40-5-75 (b).

first VGCSA conviction would go into effect when his license was reinstated for the prior suspensions. According to the letter, 180 days after the suspension went into effect, Schueman could apply for reinstatement from the first VGCSA conviction. Upon such reinstatement, his suspension for the second VGCSA conviction would go into effect, and Schueman could apply for reinstatement from that suspension one year later. The letter informed Schueman that, in connection with his applications for reinstatement, he must provide proof of completion of a DUI program and pay a restoration fee.

On March 24, 1997, Schueman's attorney wrote a letter to the department stating that "[i]t is our contention that [Schueman] is eligible for reinstatement pursuant to these suspensions immediately." The department apparently refused to reinstate the license due to OCGA § 40-5-75 (b), and the attorney wrote a second letter, dated July 31, 1997, asserting that Schueman was "eligible for immediate reinstatement upon submission of proof of the completion of the DUI/Drug Use Risk Reduction Program and payment of a restoration fee." The letter stated that Schueman "stands ready and willing to submit proof that he has completed the DUI/Drug Use Risk Reduction Program and pay the restoration fee." The department apparently declined his request, and Schueman appealed to the superior court.

The department argued in superior court that, pursuant to OCGA § 40-5-75 (b), Schueman's suspension for his first VGCSA conviction did not begin until March 5, 1998, when his preexisting suspension was cleared. The suspension for the second VGCSA conviction would begin upon Schueman's application for reinstatement from the first suspension. The department contended that, for an application to initiate the start of a new suspension, the application must be "effective" — that is, the applicant must be eligible for reinstatement from the prior suspension.

In reversing the department's decision, the trial court rejected the proposition that an application for reinstatement must be "effective" in order to trigger the start of a new suspension. The court stated that,

[t]he Code section clearly states that, in computing time periods of suspension, if an applicant's license is currently under suspension, the time period for a suspension under § 40-5-75 does not begin to run until that party *applies* for reinstatement. At no point in this statute does the legislature also require that the party *be eligible* for reinstatement at the time he applies for reinstatement. . . . In this case it is undisputed that [Schueman] was not eligible for reinstatement when he applied for such to the Department. Despite this fact, under the express language of § 40-5-75 (b)

the computation of time for the suspension of [Schueman's] driver's license as a result of his VGCSA convictions should have begun to run at the time he applied for reinstatement.

The court ordered the department to "recalculate the time period for the suspension of [Schueman's] driver's license, beginning on the date he requested reinstatement of his license," and to restore Schueman's license "upon the completion of this time period, the appropriate DUI Alcohol or Drug Use Risk Reduction Program, and fulfilment of any other conditions mandated by statute."

Before addressing the merits of the trial court's analysis, we feel compelled to address an issue not raised by the parties, but which is necessary for a proper evaluation of this case. When referring to an "effective" application for reinstatement, the trial court and the parties appear to be referring to a "timely" application — i.e., an application that is not prematurely filed. However, neither the trial court nor the parties address whether the letters sent by Schueman's attorney in fact constitute applications for reinstatement at all. OCGA § 40-5-75 (d) expressly states that applications for reinstatement "shall be made on such forms as the commissioner may prescribe and shall be accompanied by proof of completion of a DUI Alcohol or Drug Use Risk Reduction Program and a restoration fee of $210.00 or $200.00 when such reinstatement is processed by mail." OCGA § 40-5-75 (a) (2), which deals with applications for reinstatement following a second VGCSA conviction, states that a person may apply for reinstatement "by submitting proof of completion of a DUI Alcohol or Drug Use Risk Reduction Program approved by the Department of Human Resources and paying to the Department of Public Safety a restoration fee of $210.00 or $200.00 when such reinstatement is processed by mail." It does not appear that either of the two letters sent by Schueman's attorney constituted an "application for reinstatement" as set forth in the statute. The letters were not on forms prescribed by the commissioner, were not accompanied by proof of completion of a risk reduction program, and were not accompanied by a restoration fee. Although the attorney indicated that Schueman "stands ready" to submit proof of completion and pay the fee, the statute requires that such items be included as part of the application. In the absence of such items, it cannot be said that the letters constituted applications for reinstatement at all. Assuming, however, that Schueman did properly apply for reinstatement, the trial court correctly construed the statute with regard to the timeliness of applications.

In construing a statute, "the cardinal rule . . . is to glean the

intent of the legislature."[2] In gleaning this intent, we "follow the literal language of the statute unless it produces contradiction, absurdity or such an inconvenience as to insure that the legislature meant something else."[3]

Here, the literal language of the statute provides that a person may file an application for reinstatement 180 days after his first conviction for VGCSA. Following a second conviction for VGCSA, a person must wait one year before applying for reinstatement. The department contends that following the literal language would result in an absurdity because it renders language in OCGA § 40-5-75 (b) meaningless. This subsection provides that,

> if at the time of conviction of any offense listed in subsection (a) of this Code section, the person does not have a driver's license or the person's driver's license has been previously suspended, the periods of suspension specified by this Code section shall not commence *until the person applies for the issuance or reinstatement of a driver's license.*[4]

The department argues that the legislative intent behind this subsection is to punish repeat offenders by having suspensions that run consecutively rather than concurrently. According to the department, allowing a "futile" application for reinstatement to start the reinstatement clock running defeats this purpose. We disagree.

What the department fails to recognize is that not every application starts the reinstatement clock running. Under the express language of OCGA § 40-5-75 (a) (1), a person must wait 180 days from conviction before applying for reinstatement. Thus, had Schueman filed his application for reinstatement only 30 days after his first VGCSA conviction, his application would not have been effective. But Schueman did not apply for reinstatement until well after 180 days after his first conviction.[5] Accordingly, the reinstatement clock began running when he first applied for reinstatement.

With respect to his second VGCSA conviction, OCGA § 40-5-75 (a) (2) provides that a person must wait one year from the date of conviction before applying for reinstatement. If that person has a suspended license, however, he must wait until he applies for the *first* reinstatement before applying for the second reinstatement. In

---

[2] *Ga. Pub. Svc. Comm. v. ALLTEL Ga. Communications Corp.*, 227 Ga. App. 382, 384-385 (1) (489 SE2d 350) (1997).

[3] (Punctuation omitted.) Id. at 385.

[4] (Emphasis supplied.)

[5] The exact date Schueman first applied for reinstatement is not in the record. It appears, however, that he first applied shortly before August 6, 1996, the date the department responded by letter.

other words, the 180-day suspension from the first VGCSA conviction will run consecutively to the one-year suspension for the second VGCSA conviction. This construction is not only faithful to the express language of the statute, but it also serves its punitive intent by ensuring that repeat offenders serve no less than one year plus 180 days.[6]

The department's requirement that Schueman actually be eligible for reinstatement prior to filing his application would mean that Schueman's suspension would last much longer than one year and 180 days. But there is no statutory requirement that a person actually be eligible for reinstatement, and we see no need for creating such a requirement. Accordingly, the trial court properly reversed the decision of the department.

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED MARCH 24, 2000 —
RECONSIDERATION DENIED APRIL 6, 2000.

*Thurbert E. Baker, Attorney General, Mary Beth Westmoreland, Deputy Attorney General, Christopher S. Brasher, Neal B. Childers, Senior Assistant Attorneys General, Andrea S. Hirsch, Assistant Attorney General,* for appellant.

*King, King & Jones, David H. Jones, Bernard S. Brody,* for appellee.

---

[6] See *Quiller v. Bowman*, 262 Ga. 769, 771 (1) (425 SE2d 641) (1993).